Good morning. Good morning, Your Honor. May it please the Court, Michael Keneally, on behalf of Amazon, I'd like to reserve four minutes for rebuttal and I'll try to watch my clock. The District Court committed several independent errors in denying Amazon's motion to compel arbitration. The first was holding that the agreements were exempt from the FAA. The District Court didn't have the benefit of the Supreme Court's decision in Southwest Airlines v. Saxon, but Saxon prescribes a new test, which is now controlling, and which shows that the District Court's analysis was incorrect. For example, the District Court ruled that the work actually performed by plaintiffs is not relevant. Amazon's broader business is what really counts. Now, it's true that this Court's prior cases treated the nature of Amazon's business as the critical factor, but Saxon rejected that sort of focus on the hiring company. It made clear that the statutory language instead focuses on the actual work of the class of workers. But in this case, as I understand this record or understand this case, these workers, it is undisputed, engage both in last-mile delivery of interstate goods and in last-mile delivery, if you will, of intrastate goods. Correct? No, Your Honor, that's not correct. The record in our declaration states that there are plaintiffs who only perform one category, only perform the local grocery... So your view is that there's more than one class of workers involved here? Well, our view is that the class of workers involved here is not the last-mile class of workers, that it's the class of workers that engaged in TIP-eligible deliveries. Well, but see, now you're defining the class of workers by their claim. And that's what gives me some trouble. Let's assume for a moment that people in the class do both. They engage in delivery of interstate goods and they engage in delivery of TIP-eligible, which are only intrastate goods. What class are we talking about then? Only the class of claimants? In that... I'm sorry, if I understood Your Honor's hypothetical correctly, if everyone does both... If everyone did both, would the class of workers not be engaged in interstate commerce? Well, setting aside our argument that, under Saxon, last-mile delivery is not interstate commerce. Yeah, and my problem with Saxon is it doesn't say that. All that Saxon says is focus on what the workers do. And it doesn't say last-mile... It doesn't overrule Rittman. It doesn't say last-mile delivery doesn't qualify. It just says don't focus on the business of the employer. So the secretary in the office or the receptionist is not engaged in interstate commerce just because they work for a company that is. You focus on what the workers do. And so I'm positing for you workers who do things related to the interstate business, which is, say, deliver the goods, and do things that may not be related to the interstate business, which is deliver the food. So are they covered by the exemption or not? If I may just make one point about Saxon before answering Your Honour's question. I do think Saxon goes a little bit further and say don't just focus on the business, focus on the activities, because it also says the activities must contribute to transporting goods across international or state borders. Okay, so with respect to... Let's assume for a moment that these workers who deliver interstate goods are contributing for a moment, okay? I know you dispute that, but let's just assume that's the case. Are they not a class of workers doing that simply because they also engage in intrastate activities? I'd make two points, Your Honour. First... Yes or no? I mean, you seem to say that since the only claim relates to their intrastate activities, that's all we should look at. So that would mean that somebody who... somebody who drove all the way from Montana 80% of the time into California and delivered goods but occasionally stopped at the local place and delivered local goods would not be in the class of intrastate workers. I think under the statute, you look to the contract of employment as the statute uses that phrase, and that contract of employment must be a contract of employment of workers engaged in interstate commerce. If we take as a given for this question that last-mile delivery is interstate commerce, you would still need a contract of employment of workers engaged in last-mile deliveries. Limiting you to that? Or... See, that's why I'm still... We're missing each other here, and I want to be clear, because this makes some difference. I do think it does make a difference, Your Honour. This is a contract... Let me ask my question. Oh, OK. Sorry, I thought you had. You seem to be saying that because the claim that these workers are making relates to their intrastate activities, which is to say the only activities for which tips are received, that ends the... that ends this question. And I'm saying I read the... I'm worrying that I read the statute talking about a class of workers, which may mean people that only occasionally engage in this intrastate activity, but the rest of the time engage in interstate activities, that they should be covered if they're in their class. And I'm trying to figure out what your position is on that. Our position is that you have to look to the contract of class of workers engaged in the relevant activity that's at issue. Here, there's nothing in the contract between the parties, the terms of service, that says you will have to perform last-mile deliveries as well as local deliveries. The problem is you're now taking... you're now rewriting my hypothetical. I didn't mean to. Is there something in this contract that says you can't engage in last-mile deliveries? No. The contract is silent on this issue. The contract just says you're employed as an independent contractor to do jobs for Amazon, right? Yes. Doesn't limit them one way or the other. Correct. They opt through an app to engage in one or the other, or both sometimes, right? That's correct. Okay. To the extent that they engage in both, again, starting with my assumption that last-mile delivery is covered, aren't they a class of workers engaged in interstate commerce? No, I think not, Your Honor, because the last-mile delivery work in that hypothetical is not related to their claim. That is our argument. You're agreeing with me, but it's taken a long time. What you're saying is we define the class by their claim, not by their activity, but by their claim. In deciding whether their contract is exempt, you may have to look at their claim. If the contract is silent, as it is here, on the activities in which they're engaged. So that, in my extreme hypothetical, somebody... the guy who drove in from another state, even though he's engaged in interstate activity for 99% of his time, if he... once he drives the stuff in and stops at the local headquarters and picks up a food delivery, he is not a person... he's not part of a class of workers engaged in interstate commerce. If that other work is not incorporated into his contract of employment, then yes, I think that that is not an exempt worker in that claim.  but I don't understand incorporated into his contract of employment. His contract of employment requires him to do jobs that he... jobs that involve Amazon. It doesn't say one or the other, does it? It doesn't say... but a lot of contracts of employment do say this is the work you're agreeing to do, and then that might be a basis for finding that contract exempt, even if the other activities are, you know, implicated in the case. Here, though, it would be as if we... Let me make sure I understand, because I think I'm following the hypothetical in your responses, but I want to pin down your position, because you're indicating that the contract allows these last leg deliveries as well as the other types of delivery as well, right? Yes. And to the extent that they do allow last leg delivery, they would be the class of workers who are handling goods traveling in interstate commerce. I think that's correct, yes. So the distinction you're trying to draw is what, again? That because the contract allows for them to pick up other work for which they can receive TIP, that somehow nullifies their engagement in handling goods traveling in interstate commerce? In a way, because the work of the goods... handling the goods traveling in interstate commerce is not relevant to the party's lawsuit or dispute or the enforceability, in that case, of the contract, in our view. And I think it's similar to a situation where, as if you had... How do we figure that out? We look at the allegations, the complaint. We look at how many workers pick up these other types of work versus handling goods engaged in interstate commerce. You'd start it to answer the hypothetical by saying, well, this is the one case where we look at the claims rather than looking at what class they're in. How do we test that claim in this particular case? I would admit that there aren't other cases where this issue really makes a difference to the arbitrability issue, at least of the ones I'm familiar with, because there isn't either a distinction between one class of work that this group of workers is doing and the other class of work that they are potentially doing. And I think that that, in some ways, shows why the distinction that we're trying to draw here between last leg and local delivery is an artificial one, and that's why we read Saxon the way we do. I understand that argument, but I'm looking for another case that defines the class of workers by the nature of the claim that they're bringing. Is there one that you have? No, I don't have a case that does that. Because that seems to me what you're trying to do here. You're saying they should be classified by the nature of the allegations in the complaint, which is that I was denied money while I was doing intrastate service, correct? Yes. And so your position requires us to classify them by their... Assuming that you fail on the last mile issue, your position requires us to classify them by their claim. Yes, I think so, Your Honor. But the statute doesn't say that. It talks about a class of workers. It talks about a contract of employment of a class of workers engaged in interstate commerce. So you have to look at the contract. Here the contract is silent, I would say, between the two types. Then you look at the class of workers, and here, just to be clear, we don't think that there's evidence that each of these plaintiffs frequently engaged in last-mile delivery. But then you would also look at what they're engaged in in a way that's relevant to the case. Because if you didn't, you would have a situation where, say, an Amazon Flex driver does Amazon Flex deliveries for a period of time and then moves on to a totally different role, but the same contract applies. And then in that second role, they bring a lawsuit about something that happened in that role. Has nothing to do with transportation or interstate commerce. They wouldn't still be exempt in that second lawsuit just because they previously engaged in last-mile delivery. There has to be some nexus between what they're alleging and the lawsuit. We have cases, for example, the Uber driver cases, that say... that go the other way. You're not primarily engaged in interstate commerce if you only occasionally drive across the border. If what you... You know, because if you're an Uber driver, you're almost always driving in-state. So we don't look at... We don't look at the exceptions. We look at the rule, don't we? Well, in that case, the dispute between the parties was about the misclassification status of employee versus independent contractor. That was not... There was no distinction relevant there between the interstate work and the intrastate work. Can I ask you a question on a separate topic? Sure. I'm trying to sort out the terms of service. It's clear to me that if we are dealing with the 2016 terms of service, then only federal law applies, because that's... Rittman holds that, and nothing in the Supreme Court's case undoes that part of Rittman. Well, I disagree, Your Honor, but the court in Rittman considered whether restatement, Section 188, could provide a basis for applying state law other than the choice-of-law provision in the 2016 terms of service. That issue was not presented to the court in Rittman. No, but Rittman says, dealing with the 2016 terms of service, it is governed only by federal law and not by state law, correct? I think that's reading Rittman more broadly than I do. Obviously, but it seems to be exactly what the court said. The parties argue that we should apply... we should apply the locus or the most contacts. No, this contract says it's governed solely by federal law. Well, the only... I assume that's true for a moment, because... Okay. You're not going to persuade me on that issue. Let me take you to the 2019 one. The 2019 one has the same Section 11, but it has a Section 12 that says if Section 11 is ever found not to apply, we'll apply state law. Is that a modification to Section 11? No, it's a modification to Section 12. Well, of course, it's in Section 12, but doesn't it modify... In other words, we'd interpreted Section 11 as saying, this is an election only to apply federal law. Didn't you effectively modify Section 11 with the new Section 12? No, Your Honor. There's no... The language in Section 13, the modification provision, doesn't say modifications affecting Section 11 don't apply. It says modifications to Section 11. So if you had a Section 14 that said Section 11 is hereby modified to say that if this is a class of workers found exempt under Section 1 of the FAA, Delaware law will apply, would that then be a modification to Section 11? If the contract says this is a modification to Section 11? Are we placing form over substance here? Aren't you really modifying Section 11 by saying here's our arbitration clause and if federal law doesn't apply, because it says it restricts itself to federal law on its surface, will apply state law. Isn't that effectively a modification of Section 11? I don't think so, Your Honor. Well, I don't know what the work effectively is doing in the question, but it is a modification to a different provision, a modification to Section 12. I think the district court recognized that there were no relevant modifications to the 2016 Terms of Service except the arbitration provision. I think here, trying to describe a modification to Section 12 as effectively a modification to Section 11 is just adding words to the contract. The contract doesn't say effectively any modifications that affect Section 11 or that... Wait, Matt, the important difference here is where you placed it? Yes. It surely modifies what we said was the effect of Section 11, which was that only federal law should be looked at to determine arbitrability. You've now added another section that says, well, if we can't look to federal law, we'll look to state law. Why... You agree that if you stuck that in Section 11, that would be a modification? Right, because then it would be in Section 11. So your argument for why it's not a modification is it's in a different section? Right, and then under the unambiguous language, modification to Section 11, it doesn't qualify. Counselor, let's assume that you're right about that. How do you grapple with the language that states that any modification to Section 11 will not apply to claims that accrue to disputes that arose before the modification? So we understand that language to prevent application of the delegation provision, for example, in the 2019 Terms of Service, which is in Section 11. That we cannot apply here because of when the claims purportedly accrued. But because this is not a Section 11 modification that we're relying on, it's a Section 12 modification, we don't find that to be an impediment to applying Delaware law for the 11 plaintiffs who accepted the 2019 Terms of Service. That just seems like you want it both ways. No, Your Honor. We just want to enforce the language here, modification to Section 11, according to its plain meaning, which is if you change Section 11, you can't apply those changes to already accrued claims. But if you change a different part of the contract, you can do so. I see that I'm in my rebuttal time. If I could just make one more point on behalf of my reading of Rittman, I will note, and this is covered in the reply brief already, so I won't belabor it, that the Fifth Circuit in Lopez v. Sintas said that last-mile delivery work was not exempt under Rittman for much of the reasons that we're arguing here. Thank you, counsel. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, my name is Hillary Schwab. I represent the plaintiffs in this matter. Amazon Flex drivers are workers in interstate commerce under Section 1 of the FAA. Even those Amazon Flex drivers who only deliver local goods? Yes, Your Honor, absolutely, because it is clear from the case law that you look at the class of workers and not specifically what each individual worker does. The cases that Your Honor referenced before relating to Uber and pointing to cases where, okay, this Uber driver went across state lines every once in a while, in those cases, courts are clear that you don't just look at what an individual worker does, you look at the, quote, class of workers. That's the language in the FAA. Can I tell from this, is it enough that one delivery is made as an interstate last-mile delivery and that every other delivery that people do is a local delivery? As to an individual, perhaps, and as to the class of workers, I don't think you need to get there, because the record in this case, contrary to what Amazon's counsel says, is clear that plaintiffs and Amazon Flex drivers frequently, and that's the term used in Saxon, frequently perform these last-mile deliveries. The record here consists of affidavits from seven of the 13 named plaintiffs stating that those individuals frequently do both types of jobs. I guess I was asking about those named plaintiffs who don't. Well, they don't have affidavits in the record, but that is not to say that they don't do the work. And I'll note, Your Honor, that Amazon's only evidence relating to the works done is an affidavit from an Amazon manager saying, quote, that Amazon Flex drivers may book only tipped deliveries. There is no evidence provided by Amazon that either any of the named plaintiffs or, frankly, any members of the class of workers actually do only tipped deliveries. This is not sufficient to contest the evidence produced by the plaintiffs. And in Saxon, specifically, there was an affidavit that, quote, was not, quote, meaningfully contested by Southwest Airlines. Similarly, Amazon has not meaningfully contested the record evidence. Does Rittman survive Southwest Airlines? Absolutely, Rittman survives Southwest Airlines. Well, I'm not sure absolutely it does. All you have to show is that it's not clearly irreconcilable. I'm going to predict how Rittman would come out of the Supreme Court today. Yes, Your Honor. I would not have absolute confidence. I withdraw the adverb. Yes, Rittman does survive Saxon. Rittman dealt with... considered under the exact same standard, frankly, this standard about whether the workers dealt with engaged-in goods that are in interstate commerce. In both Saxon and Rittman, the courts held that the worker does not, him or herself, need to cross state lines as long as they are involved in a continuous journey interstate. Yeah, but in Rittman, we focused on the nature of Amazon's business. And I wonder... And Saxon at least tells us that's not the correct analytical approach. We ought to focus on the work of the workers. I dispute that difference. I think what was going on in Saxon was that the plaintiffs in Saxon argued for an industry-wide approach and said, look only at what Southwest does. Southwest moves goods and people across interstate lines. That's all you need to look at. Web designers, ticket agents, all of those people should be covered by the exemption. Here, that argument isn't presented. And in Saxon, the Supreme Court did rely on what Southwest does. It says right at the beginning, Southwest moves a lot of cargo. And to move that cargo, it employs ramp agents. That's exactly what Rittman does. Rittman said, okay, Amazon moves a lot of packages. To move those packages, deliver them to the customers, it uses Amazon Flex drivers. It's the same analysis. It's not that you ignore what the company does. It's that what the company does is not in and of itself dispositive. And that's an important distinction. So Rittman did exactly what the Supreme Court did in Saxon. It just was not presented with this industry-wide argument by the plaintiffs, so it didn't have to engage in an absolute statement that all you need to look at is what the company does. Can I ask you to, because I don't want to lose this in the course of the argument, switch gears and talk about the terms of service? Absolutely. Let me tell you how I read them, and then tell me how this applies. It's clear to me that if under the 2016 terms of service, Rittman says federal law is determinative. Put aside what federal law may require for a moment. The 2019 ones, on their surface, say that if federal law is not found applicable, Delaware law should apply. Why shouldn't Delaware law apply? For several reasons. First, it is the 2016 terms of service arbitration agreement that applies here, not the 2019 one, and that's for a couple of reasons. Let's go back. 2016 says this will apply to everything that accrues... Well, 2019 says... 2016 applies to everything that accrues during its term. Correct. But does it apply to things that were... The later agreement says it applies to everything. It supersedes all previous ones, and therefore, on its face, it would seem to me to say, forget whatever 2016 said. We just did away with that. We have a new agreement. However, the 2016... Well, first of all, I'll note two of the plaintiffs never were under the 2019 agreement. So this Court is still faced with the 2016 terms of service, regardless of whether it considers the 2019 terms of service as to the other plaintiffs. But putting that aside, even as the plaintiffs who continue to work after 2019, the 2016 terms of service states that no modifications to the arbitration... Section 11. ...to Section 11 shall apply as to claims that have accrued. There's no dispute that the claims here accrued prior to 2019, so that non-modification provision applies. Now you go to the 2019 terms of service. Contrary to Amazon's arguments, there are significant modifications to the 2016 Arbitration Clause. It is not true that it has not been modified. Most significantly, the 2016 Arbitration Clause itself, Section 11, states federal law and the FAA apply here. So that's right within the Arbitration Clause. That provision of the Arbitration Clause was pulled out in 2019. However, that's a modification that cannot apply here. The Section 11 itself. Secondly, the 2016 contract also has a survival provision, Section 16, which explicitly states that no matter what happens with subsequent agreements, the Arbitration Clause and the Choice of Law Clause, among others, survive this agreement. So the 2016 terms of service, which was written by Amazon, and as this Court recognizes, to the extent there are ambiguities, though I don't think there are, they're construed against Amazon. Those provisions both require that the 2016 terms of service is the relevant contract. And you don't think the language in the 2019 TOS that says, this supersedes all previous agreements, deals with the survival clause? No, I don't, because how could you put a survival clause or a non-modification clause into an agreement? People get it. You do agree that you could have had something in the 2019 terms of service that says the survival clause and the no-modification clause are hereby, you know, we're giving them up in return for something else. I think arguably you could, although I think if you look at the 2019 agreement closely, when it says it's governing, it has like a retroactivity provision, for example. And that provision has to do with the services. The 2019 agreement supersedes as to services being provided, so the driving, but it doesn't supersede as to these provisions, the arbitration agreement, the choice of law clause, the non-modification clause, and the survival clause. I don't think it can, and I don't think it explicitly attempts to do that. But, Your Honor, I'd like to speak about Delaware law, because this was almost an identical issue was raised and decided by the First Circuit in the Wythaka case. Delaware law, even if the 2019 contract were to apply, which we don't think it does, Delaware law conflicts with Washington law in a fundamental way that's relevant to this case, which is that under Washington law, under the Washington Supreme Court's decision in Scott v. Singular Wireless, an arbitration provision that has a class action waiver cannot be enforced. And that case was decided under the Washington Consumer Law, which is the same law that is at issue in this case. Under the Restatement for Conflict of Laws, which Delaware adopts, you cannot go with the chosen law of the contract if that law conflicts with the law of the state with the most significant context. And here, because Washington has the most significant context, the Delaware law cannot be applied even as of 2019. The district court did not confront? The district court did not confront it. And, Your Honor, I would say that because we're dealing with Washington state law in a Washington Supreme Court case, this court does have available to it the option of certifying this question as to Washington law. Well, we also have the option if we were to remand. Well, there's going to be further proceedings in this case. Yes, you'd have the option. So if we disagree with you on the federal issue, we could certainly ask the district court to confront this in the first instance. It could be confronted by the district court and or by the Washington Supreme Court. The Washington Supreme Court's decision is clear in that case. However, because it was decided shortly before AT&T versus Concepcion, there's been little extrapolation on it because if the FAA applies, then it does not apply under that Supreme Court precedent. Your Honor, I would just like to discuss a little bit the Lopez case. Lopez was a Fifth Circuit case that was decided that does not apply here for a couple of reasons. One, it involved a situation where goods came to rest in state and then were, after that point, ordered by a customer and then delivered. So I think factually it is distinct from the Amazon Flex last mile delivery. Or to the extent that it conflicts with Rittman and or Saxon, it seems to adopt the workers themselves need to cross state lines type of standard, which the Supreme Court explicitly rejected in the Saxon case. And indeed, all of the cases that most district court cases, although some appellate court cases that Amazon cites for the principle that the Section 1 exemption doesn't apply, fall on the other side of the dividing line essentially from this case. Those are cases in which goods come from out of state. They come to rest at, say, a restaurant. They're then modified by the restaurant, reproduced, repackaged, ordered in state by a customer, and then sent on for the final delivery. And also that final delivery often is done by a company that didn't have anything to do with the goods being shipped in from in state. Here, on the other hand, and in Saxon, the order occurs from the customer of a good that's out of state, and there's a continuous journey from out of state all the way to the customer in which the Amazon flex worker participates. And I'd just like to address another argument from Amazon's brief. Amazon identifies the fact that the Carmona v. Domino's case was remanded by the Supreme Court in light of Saxon and attempts to... Yes, Your Honor, I figured that you might be. And the Amazon attempts to state that that somehow impugns the Rittman decision. First of all, it doesn't impugn either decision. It's simply a remand for reconsideration, respectfully, Your Honor. And secondly... Let me just say, that's an issue the Carmona panel is going to have to address on remand because it's precisely the argument that's being made in that case by Amazon. And it may well... I have no idea which of the two cases has priority on that issue. So it will... I don't want to treat it as if it is decided. It is the issue posed by the remand. Yes, the case is for remand. But the point that I'd want to make is that even if Carmona were to go the other way, the ways in which Saxon may implicate that case don't implicate this case because there was an issue of the goods coming to rest and being modified, if you will, in state and being ordered in state by customers. That's not what's going on here, and that's not what was going on in Saxon. And notably, the Supreme Court did deny certiorari in the Rittman case. But the fact that Carmona is now up for reconsideration has no bearing on the endurance of the Rittman decision. As to the facts of this case, at least. As to the facts of this case, at least. That's correct, Your Honor. I want to address the point relating to the class of workers and the relation to the claim at issue. As Your Honor notes, there is no case law in which a court has adopted the standard espoused by Amazon. To the contrary, there is case law that goes the other way. In Saxon itself, the class of workers considered for purposes of the Section 1 exemption were essentially ramp agents, people doing ramp agent work. Even though the plaintiff was a ramp supervisor and the putative class for Rule 23 purposes in that case were only ramp supervisors, the claim there had to do with an overtime exemption, were they properly characterized as managers or not. Ramp agents were not part of the class for purposes of the claim. And in fact, in Saxon, ramp agents even had a different contract. The ramp agents were covered by a collective bargaining agreement while the supervisors were covered by this contract with an arbitration clause. So the Saxon case makes clear that it cannot be the claim that determines the class of workers. So, too, in the Caprioli v. Uber case, which was decided by the Ninth Circuit, there the class, the Rule 23 class, was Massachusetts Uber drivers. And the court explained in detail that for purposes of determining the Section 1 exemption, it was appropriate to consider not just Massachusetts Uber drivers, but all Uber drivers across the country. And the court stated that it is important when considering the Section 1 exemption not to limit it by, quote, the scope of any putative class. So, similarly, this court has precedent being clear that you don't look at the claim in the case or even the Rule 23 group affected, but instead you look more broadly at the class of workers nationwide, pursuant to the language of Section 1. Can I just ask you a procedural question? Am I right in thinking all that's happened so far of relevance to us is the district court has denied a motion to compel arbitration? That is correct, Your Honor. It hasn't dealt with whether or not the complaint states a claim? That is correct. There was briefing on Amazon's substantive motion to dismiss. Right, I understand. But that's why I was asking. The court only reached the only issue in front of us is the denial of arbitration. That's correct, Your Honor. And the district court has stayed further proceedings pursuant to Amazon's opposed motion in that regard. So the case has stayed a waiting decision on that threshold issue. I want to talk for a minute about Washington law being the appropriate law to apply to the extent that state law were to apply, which I'm in agreement with, Your Honor, that under the Rittman case, clearly under the 2016 Terms of Service, that is not the case. But were the court to consider state law under any contract that it deemed to be relevant, it has to be Washington law that applies for several reasons. Washington unquestionably has the most significant contacts in this case. And Amazon cites some cases in its reply brief relating to a company happening to be headquartered one place, but all the relevant actions occurred in another place. Here, that's not what's going on. It's true that Amazon is headquartered in Washington, but it's also true that the primary claim in this case has been brought under Washington state law. Why can't the parties voluntarily agree to apply state law? To apply another state's law? Yes. They can, but then it's subject to a conflict of laws analysis. And here, the conflict of laws analysis would provide that Washington law has to apply. You're saying under the restatement, if two parties voluntarily, with a nationwide business, voluntarily agree to choose the law of a particular state, we nonetheless would apply the law of the state where the plaintiffs reside because it had more direct contact with those plaintiffs? Not where the plaintiffs reside, but the state with the most meaningful contacts. That's correct, Your Honor. The restatement of Conflict Section 187 says that the chosen state law cannot apply if that state has no substantial relationship to the claims in the case, which is true here, or if it is contrary to a fundamental policy of the state that does have the most substantial contacts. Both of those prongs apply here because Delaware has nothing to do with the claims in the case, but also, more importantly, Washington public policy, as stated in Scott v. Singular, is that an arbitration provision such as this one cannot be applied with the class action waiver, and Delaware does not have a similar policy, and therefore, it conflicts with Washington state policy. So under conflict of laws analysis, yes, the parties could not choose Delaware law in a case such as this where Washington public policy would prohibit it. I see that I have 17 seconds left, unless Your Honors have any questions. All right, it doesn't appear that we do. Thank you so much. Thank you. First, on the FAA question, I think that the key part of Saxon to emphasize here is the directly involved in transporting goods across borders standard that the court adopted for figuring out whether a class of workers, considering their own activities, is engaged in business. I don't see how you can conclude that local delivery drivers are directly involved in transporting goods across borders unless you look at the business for which they're performing those activities and attribute to the workers themselves something that the business is doing, namely contracting with other delivery providers and with customers. So that's the analysis that Saxon prohibits, and that's why I think that the Fifth Circuit concluded that local delivery drivers in Lopez were not covered by the exemption. And I disagree with Ms. Schwab that Lopez is factually distinguishable. The plaintiffs there relied entirely after Saxon on the Rittman decision, and the Fifth Circuit itself compared the drivers in that case to Amazon Flex drivers in Rittman and Wetaka. I think at a minimum on the FAA, a remand is necessary to determine whether the workers who sued here actually did last-mile work on a frequent basis. Contrary to Ms. Schwab, not even all of the declarations here suggest that every one of the plaintiffs did so. I point to ER-73, Ms. Pascal's declaration, where there's no claim even to have been doing the non-TIP-eligible last-mile kind of work. And I would say also it's incorrect that our declaration does not say that there are people who only do the local grocery and retail – I'm sorry, grocery and restaurant-style deliveries. At ER-87, we state without contradiction that some drivers have done only the TIP-eligible, quote-unquote, GSF deliveries. I think if the court does remand for further factual development on the FAA issues, which is reasonable given the change in law under Saxon, I think also any distinctions that the court might draw in Carmona or this case itself could also make further fact development necessary, because obviously this motion was presented before any of those decisions were rendered. Going to state law real quickly – So you're saying remand for further factual development, so we're not doing the analysis, but that each side in the district court gets to put in additional declarations? Declarations geared toward the legal tests of Saxon and then whatever this court holds in this case in Carmona. And I think factual development is also – I'm sorry, a remand is also appropriate for the choice of law or conflicts of law analysis that Ms. Schwab was discussing on the state law piece, because as Judge Hurwitz noted, the district court didn't actually get that far. The district court said, I don't need to consider the 2019 terms because the claims here accrued earlier. And contrary to what Ms. Schwab said, Section 11 in neither version addresses the applicability of the FAA. So there was no relevant modification to Section 11. And I see I'm out of time, so I thank the court for its attention and indulgence today. Thank you very much to both sides for your very helpful arguments today. The matter is submitted. That's our last case on the argument calendar today. So we're in recess until tomorrow morning. Thank you. All rise. Thank you.
judges: NGUYEN, HURWITZ, Ezra